Below is an opinion of the court.

_Teresa H. Pearson_
TERESA H. PEARSON
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No.  24-30708-thp7 |
| Angel Farrington, | |
| Debtor. | |
| Kenneth S. Eiler, | Adv. Proc. No. 25-03076-thp |
| Plaintiff, | OPINION[1] |
| v. | |
| Derek Farrington, an individual, | |
| Defendant. | |

This matter came before the Court on plaintiff's Motion for Default Judgment.[2]  The court has reviewed the motion and the records and files of this case, and rules as set forth below.

### Jurisdiction

This court has jurisdiction of this adversary proceeding, arising in this bankruptcy case, under 28 U.S.C. § 1334(b). The district court has referred to this court all bankruptcy cases and

---

[1] The active judges of the district approve this opinion.
[2] Plaintiff's Motion for Default Judgment, ECF No. 14, filed Feb. 12, 2026.

proceedings in this district.[3]  This court has authority to decide this adversary proceeding as a core proceeding under 28 U.S.C. § 157(b)(2)(O).  Venue is appropriate under 28 U.S.C. § 1409(a).  The case is properly filed as an adversary proceeding under Fed. R. Bankr. P. 7001(a).

## Procedural History

On November 3, 2025, plaintiff Ken Eiler, the chapter 7 trustee for debtor Angel Farrington, filed his complaint against defendant Derek Farrington for mandatory injunction, specific performance, and the appointment of a receiver.[4]  Plaintiff served the complaint,[5] but defendant did not respond.  Plaintiff sought entry of an order of default,[6] which the court granted.[7]  Plaintiff then filed this motion for default judgment.

## Factual Background

The complaint alleges the following facts, which for purposes of this motion the court accepts as true.[8]

1.    Debtor and defendant were married in June 1994.  In or around November 2005, debtor and defendant purchased real property located at 11200 SW Powell Butte Highway, Powell Butte, Oregon 97753 (the "Property").

2.    Debtor initiated dissolution proceedings in 2024 in the Circuit Court of the State of Oregon for the County of Crook, Case No. 24DR04367.  On April 19, 2024, the Crook County Circuit Court entered a General Judgment of Dissolution (the "Divorce Decree"), which among other things, provides that defendant may live in the Property so long as he pays the mortgage expenses and property taxes.  If defendant defaults on the mortgage, the Property must be sold and the proceeds of the sale shall be split equally between the debtor and defendant.

---

[3] D. Or. Loc. Bankr. R. 2100-2(a)(1).
[4] Complaint, ECF No. 1, filed Nov. 3, 2025.
[5] Certificate of Service, ECF No. 6, filed Nov. 4, 2025.
[6] Motion for Order of Default, ECF No. 10, filed Jan. 13, 2026.
[7] Order of Default, ECF No. 11, filed Jan. 13, 2026.
[8] *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.")(citation omitted).

3.      Plaintiff trustee now holds all rights of debtor under the Divorce Decree, including the 50 percent of proceeds upon sale of the Property.

4.      Defendant is a serial defaulter on the obligation secured by the Property.

5.      On March 18, 2024, debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.[9]

6.      On July 3, 2024, while defendant was in default under the mortgage, plaintiff trustee sent a letter to defendant regarding selling the Property.  Defendant did not respond to the July 3rd letter.

7.      The mortgage lender seeks relief from the stay to foreclose on the Property. Defendant has not listed the Property for sale despite the threat of stay relief and foreclosure.

### Conclusions of Law

This court has discretion, after considering various factors, whether to enter a default judgment.[10]  The court may decline to issue a default judgment for any claims that lack substantive merit.[11]

**A.      The Court Will Enter a Default Judgment for a Mandatory Injunction and Specific Performance.**

The debtor's right to proceeds from the Property became property of the estate when she filed bankruptcy.[12]  The plaintiff trustee has a duty to collect and reduce the property of the estate to money.[13]  The mandatory injunction and specific performance that the plaintiff trustee requests in the complaint are reasonable and necessary to aid the trustee in performing his duties to liquidate the debtor's rights and recover assets of the estate for the benefit of creditors.  After considering the factors in *Eitel*, and because plaintiff trustee's claims are based on enforcing an underlying state court judgment that has already determined the rights between debtor and defendant, entry of a default judgment on these claims is appropriate.

---

[9] 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").
[10] *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092-93 (9th Cir. 1980).
[11] *Id.*
[12] 11 U.S.C. § 541(a).
[13] 11 U.S.C. § 704(a)(1).

B.      **The Court Will Not Enter a Judgment Appointing a Receiver.**

Although bankruptcy courts have broad authority to carry out the provisions of the Bankruptcy Code, a bankruptcy court may not contravene specific statutory provisions of the Code.[14]  A bankruptcy court may not take action that the Code prohibits.[15]

The Bankruptcy Code sets forth the power of the bankruptcy court.  Section 105(a) authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[16]  However, there is one exception to this power—section 105(b) states that a bankruptcy court "may not appoint a receiver in a case under this title."[17]

The plaintiff trustee asks the court to appoint a receiver, notwithstanding this language in section 105(b).  He asserts that a bankruptcy court may appoint a receiver for a limited purpose, citing published decisions from two other circuits,[18] and two unpublished opinions from lower courts in this circuit.[19]

This court starts its review, as it must, with the language of the statute.  This court has a duty to follow the plain language of the Bankruptcy Code.  "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."[20] Here, the language of the statute plainly states that the bankruptcy court may not appoint a receiver in a case under this title.  This court does not find that language to be ambiguous or absurd.

---

[14] *Law v. Siegel*, 571 U.S. 415, 420-21, 134 S. Ct. 1188, 1194 (2014).

[15] *Id.*, 571 U.S. at 421, 134 S. Ct. at 1194.

[16] 11 U.S.C. § 105(a).

[17] 11. U.S.C. § 105(b).

[18] *In re Memorial Ests., Inc.*, 797 F.2d 516, 519 (7th Cir. 1986); *Craig v. McCarty Ranch Tr. (In re Cassidy Land & Cattle Co., Inc.)*, 836 F.2d 1130, 1133 (8th Cir. 1988).

[19] *Balakian v. Balakian*, No. CV-F-07-1011, 2008 WL 2705393, at *18 (E.D. Cal. July 8, 2008), *modified on reh'g*, No. CV-F-07-1011, 2008 WL 4539481 (E.D. Cal. Oct. 10, 2008); *In re Kellogg-Taxe*, No. 2:13-ap-02019-RN, 2014 WL 1329822, at *8 (Bankr. C.D. Cal. Mar. 28, 2014).

[20] *Lamie v. U.S. Tr.*, 540 U.S. 526, 534, 124 S. Ct. 1023, 1030 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank., N.A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, 1947 (2000)).

It appears, however, that some believe that this language could be ambiguous, and that this statute allows for the appointment of a receiver in an adversary proceeding but not a main bankruptcy case.  For example, one leading treatise states that section 105(b) "only prohibits appointment of a receiver in a case under title 11.  It does not prohibit the appointment of a receiver in a related adversary proceeding if otherwise authorized and appropriate."[21]  That reading of the statute is inapplicable here, where jurisdiction is based on claims arising under the Bankruptcy Code, not merely relating to a case under title 11.  Further, this court does not find that reading of the statute persuasive because it is unsupported by the text and context of the Bankruptcy Code.  Nowhere in the text of the Bankruptcy Code does Congress draw a distinction between adversary proceedings and other matters arising under the Bankruptcy Code or arising in or related to a case under title 11.  Congress granted bankruptcy jurisdiction over "all cases under title 11"[22] and "all civil proceedings arising under title 11, or arising in or related to cases under title 11."[23]  The distinction between main-case administrative and contested matters, on one hand, and adversary proceedings, on the other, was created solely by Federal Rule of Bankruptcy Procedure 7001.[24]

Even if, however, section 105(b) were ambiguous, the legislative history of the Bankruptcy Code provides abundant support for the conclusion that bankruptcy courts do not have the authority to appoint receivers.  Among other problems that Congress was trying to solve when it adopted the Bankruptcy Code, Congress was trying to address the perception that bankruptcy was not a fair process because it was controlled by creditors and others operating the bankruptcy system.[25]  In the House Report to Accompany H.R. 8200, the Committee on the Judiciary addressed deficiencies in the Bankruptcy Act as follows:  "The Bankruptcy Act also provides for the appointment of a receiver pending the election or appointment of a trustee.  In

---

[21] 2 Collier on Bankruptcy ¶ 105.06 (Alan N. Resnick & Henry J. Sommer Eds., 16th ed. rev. 2026).
[22] 28 U.S.C. 28 U.S.C. § 1334(a).
[23] 28 U.S.C. 28 U.S.C. § 1334(b).
[24] Fed. R. Bankr. P. 7001.
[25] H.R. Rep. No. 95-595, at 91-93 (1977) (hereafter, the "House Report") (emphasis added).

some districts the receiver's position is also viewed as a patronage job and receivers are appointed by the judge as a matter of course. Then if a trustee is not elected, the receiver is appointed trustee in the case."[26] Later, in the section-by-section description of the bill, the House Report stated that section 105(b) provides that ". . . the bankruptcy judge is prohibited from appointing a receiver in a case under title 11 *under any circumstances*. The Bankruptcy Code has ample provision for the appointment of trustees when needed. Any appointment of a receiver would simply circumvent the established procedures."[27] In the Senate Report to Accompany S. 2266, the Senate Judiciary Committee said the exact same thing.[28] It is hard to imagine how Congress could have expressed its intent more clearly than that.

The structure of the Bankruptcy Code also supports the view that bankruptcy judges do not have the power to appoint receivers. In adopting the Bankruptcy Code, Congress also removed the bankruptcy court's former power to appoint trustees and intentionally vested that power in the United States trustee[29] and creditors.[30] Again, this was purposeful. The House Report describes Congress' concern that a bankruptcy judge's supervision of a bankruptcy trustee would "constitute no part of his judicial responsibilities, and divert him from the important judicial and legal work that must be done in bankruptcy cases. . . . Deeper problems arise because of the inconsistency between the judicial and administrative roles of the bankruptcy judges. The inconsistency places him in an untenable position of conflict, and seriously compromises his impartiality as an arbiter of bankruptcy disputes."[31] By definition, a receiver is an officer or agent of the court.[32] Given that Congress specifically wanted to prohibit

---

[26] House Report, at 92-93.

[27] House Report, at 316 (emphasis added).

[28] S. Rep. No. 95-989, at 29 (1978) (". . . the bankruptcy judge is prohibited from appointing a receiver in a case under title 11 under any circumstances. The Bankruptcy Code has ample provision for the appointment of trustees when needed. Any appointment of a receiver would simply circumvent the established procedures.").

[29] 11 U.S.C. § 701(a)(1).

[30] 11 U.S.C. § 702 (providing for trustee elections).

[31] House Report, p. 89.

[32] *Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1312 (9th Cir. 1981) (a receiver is an officer of the court); ORS 37.030(15)("'Receiver' means a person appointed by the

bankruptcy judges from having conflicts arising from direct supervision of the estate and its agent (the bankruptcy trustee), this court cannot conclude that Congress meant to allow bankruptcy judges to supervise receivers.

In a well-reasoned opinion, the Bankruptcy Court for the Central District of California, Santa Ana Division, has reached the same conclusion as this court.[33]  In *Halvorson*, the court noted the fact that "[b]ankruptcy trustees and receivers have very different roles, duties and loyalties" and held that the appointment of a receiver in an adversary proceeding would circumvent Congress' intent and was a "strong reason why a bankruptcy court has no authority to appoint a receiver in an adversary proceeding."[34]  In this case, it would be especially problematic to grant the relief that the plaintiff trustee requests, because the plaintiff trustee asks the court to appoint himself as the receiver.[35]  As the court in *Halvorson* noted, "[a] trustee has fiduciary duties running to the creditor body and, if the estate is solvent, the debtor. A receiver's fiduciary duties run to the court."[36]  Appointing plaintiff trustee as a receiver in this case could lead to potential conflicts in those fiduciary duties.

The court has reviewed the authority cited by the plaintiff trustee and does not find it persuasive.  The plaintiff trustee's reliance on the cases from the Seventh Circuit, *Memorial Estates,* and the Eighth Circuit, *Cassidy Land & Cattle Co.*, is misplaced.  Both of those cases predate *Hartford*, *Lamie*, and *Siegel,* the Supreme Court cases that require bankruptcy courts to follow the plain language of the Bankruptcy Code and not contravene its requirements.  This court questions the continuing validity of those cases after *Hartford*, *Lamie*, and *Siegel.*

---

court as the court's agent, and subject to the court's direction, to take possession of, manage or dispose of property.)."

[33] *Kosmala v. Baek (In re Halvorson)*, 607 B.R. 680, 685 (Bankr. C.D. Cal. 2019).

[34] *Id.*, 607 B.R. at 685.

[35] To be clear, the court is not questioning the plaintiff trustee's qualifications to serve.  The plaintiff trustee is an experienced and capable attorney, trustee, and receiver.  The question here is a legal one:  whether this court can appoint a receiver.

[36] *In re Halvorson*, 607 B.R. at 685.

But even if *Memorial Estates* and *Cassidy Land & Cattle Co.* were still valid, they are unpersuasive.[37] First, *Memorial Estates* is factually distinguishable. *Memorial Estates* involved an adversary proceeding where the litigation was initially filed in state court and removed to the bankruptcy court after the bankruptcy case was filed.[38] The Court of Appeals in that case reasoned that the dispute had nothing to do with bankruptcy law, and that section 105 was not intended to cut off independent rights existing outside of bankruptcy.[39] It concluded, without confronting the plain language of the statute, that "[t]he power cut off by section 105(b) of the Bankruptcy Code is the power to appoint a receiver for the bankrupt estate, that is, a receiver in lieu of a trustee."[40] By contrast, this case involves the trustee trying to exercise his rights to liquidate assets belonging to the estate (an exercise of the trustee's fundamental duties) in a core proceeding. Plaintiff trustee would have no right to bring this adversary proceeding absent this bankruptcy case.

The remaining cases the plaintiff trustee cites contain no real analysis of section 105(b). In *Cassidy Land & Cattle Co.*, the bankruptcy trustee initiated an adversary proceeding for foreclosure to collect a mortgage held by the estate[41]—a situation factually more similar to this case. However, the Eighth Circuit Court of Appeals in *Cassidy Land & Cattle Co.* simply cited *Memorial Estates* to conclude that section 105(b) precluded appointment of a receiver in a main bankruptcy case but not in an adversary proceeding.[42] In *Balakian*, the District Court for the Eastern District of California did not analyze Section 105(b), but merely cited *Cassidy Land & Cattle Co.* for the proposition that section 105(b) did not preclude the bankruptcy court's

---

[37] This court recognizes that it should avoid creating a circuit split "if at all possible" and "unless there is a compelling reason to do so." *United States v. Anderson*, 46 F.4th 1000, 1008 (9th Cir. 2022) ("if at all possible"); *Padilla-Ramirez v. Bible*, 882 F.3d 826, 836 (9th Cir. 2017) (*quoting Kelton Arms Condo Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2024)) ("unless there is a compelling reason to do so"). Here, there is compelling reason to do so, because *Memorial Estates* and *Cassidy Land & Cattle Co.* are inconsistent with the modern requirement to apply unambiguous statutory text as written.

[38] *In re Memorial Estates*, 797 F.2d at 519.

[39] *Id.*, 797 F.2d at 519-520.

[40] *Id.*, 797 F.2d at 520.

[41] *In re Cassidy Land & Cattle Co., Inc.*, 836 F.2d at 1131.

[42] *Id.*, 836 F.2d at 1133.

appointment of a receiver to foreclose a lien in an adversary proceeding.[43]  And in *Kellogg-Taxe*, the Bankruptcy Court for the Central District of California, Los Angeles Division, also did not analyze Section 105(b), but merely quotes the Collier treatise (which in turn cites *Cassidy Land & Cattle Co.* and *Memorial Estates*) to conclude that the court could appoint a receiver in an adversary proceeding.[44]

Based on the analysis above, this court concludes that it does not have the authority to appoint a receiver in this adversary proceeding.[45]  Therefore, this court need not reach the question of whether a receiver could be appointed based on the authority of the Oregon Receivership Code.[46]

### Conclusion

Because this court does not have authority to appoint a receiver in this adversary proceeding, the court will not sign the proposed form of judgment submitted by the plaintiff trustee.  Plaintiff trustee may submit a new form of judgment consistent with this opinion and Fed. R. Civ. P. 54(c), made applicable by Fed. R. Bankr. P. 7054.

# # #

---

[43] *Balakian*, 2008 WL 2705393, at *18.

[44] *In re Kellogg-Taxe*, 2014 WL 1329822, at *7.

[45] This opinion addresses only the power of this bankruptcy court to appoint a receiver.  It does not address or limit the power of a receiver appointed by another court to act in a bankruptcy case, which this court has already recognized.  *See In re Orchards Village Invs., LLC*, 405 B.R. 341, 355 (Bankr. D. Or. 2009) (excusing state court receiver from turning over assets and business operations to debtor; *likely overruled on other grounds by Sino Clean Energy, Inc. v. Seiden (In re Sino Clean Energy, Inc.)*, 901 F.3d 1139 (9th Cir. 2018); *In re Orchards Village Invs., LLC*, No. 09-30893-RLDLL, 2010 WL 143706, at *22 (Bankr. D. Or. Jan. 8, 2010) (confirming joint chapter 11 plan filed by state court receiver and secured lender).

[46] Oregon Revised Statutes, Chapter 37.  Although this judge was involved in drafting the Oregon Receivership Code and is thoroughly familiar with that law, it is unnecessary for this court to comment on whether a receiver may be appointed under state law in this case.  If the plaintiff trustee wishes to record a judgment issued in this case in state court and seek the aid of a receiver there to assist in enforcing the judgment, that is a matter for the plaintiff trustee to raise with the state court.  The state court can then decide whether appointment of a receiver is appropriate.